UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KEOSHA JORDAN, ) | |
| ) | Jury Demanded |
| Plaintiff, ) | |
| ) | No. 1:09-cv-142 |
| vs. ) | |
| ) | Collier/Carter |
| THE KRYSTAL COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes Plaintiff, by and through counsel, and submits her memorandum of law in support of her Motion for Partial Summary Judgment.

## I. INTRODUCTION

This is a lawsuit alleging unlawful discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq*. and the Tennessee Disabilities Act (TDA), Tenn. Code Ann. §8-50-103. As an essential element of Plaintiff's claims, she must prove that, at the time of the alleged adverse employment action, she was a "qualified individual with a disability" as that term is defined within the ADA and TDA.[1] Plaintiff's instant Motion focuses solely on this element. To that end, Plaintiff seeks a determination as a matter of law from this Court that at all times during her employment with Defendant, she was a qualified individual with a disability under the ADA and TDA. The Court's determination of this issue is appropriate because (1) the relevant facts are undisputed; (2) a legal analysis of the ADA and TDA, including EEOC companion regulations, are required, which may tend to confuse a jury;

---

[1] Because the TDA mirrors the ADA, the same analysis applies to both statutes. *Bower v. Federal Express Corp.*, 156 F.Supp.2d 678 (W.D. Tenn. 2001).

and (3) a determination of this issue will help narrow the issues tried to the jury, thus promoting judicial economy.

## II. BRIEF FACTUAL BACKGROUND

Plaintiff was born deaf. (Plaintiff depo. p. 23;[2] April Lockhart depo. p. 12;[3] Plaintiff decl. ¶2.)[4] She has a severe hearing loss. (April Lockhart depo. p. 12.) Plaintiff also has a severe speech impairment, which has existed since early childhood. (Plaintiff decl. ¶3.) She cannot audibly speak in the English language. (Id.) Plaintiff communicates primarily by sign language. (April Lockhart depo. p. 14; Plaintiff decl. ¶4.) She can also read lips. (Plaintiff depo. p. 24; April Lockhart depo. p. 14.)

Before Plaintiff was hired by Defendant, she received cochlear implants. (Plaintiff depo. p. 24; April Lockhart depo. p. 13; Plaintiff decl. ¶5.) Even with the cochlear implant, while Plaintiff's hearing has improved some, Plaintiff still cannot hear enough to understand speech, and she still has severe hearing loss. (April Lockhart depo. p. 13-14; Plaintiff decl. ¶5.) For example, even with the cochlear implant, Plaintiff can hear sounds but cannot distinguish speech. In order for Plaintiff to understand a person who is talking, she must face the person who is talking in order to read his or her lips. (Plaintiff decl. ¶5.) Even with the cochlear implant, Plaintiff cannot understand sound transmitted through electronic devices such as a radio. She cannot watch television without closed captioning. (Plaintiff decl. ¶6.) There are certain types of sounds that Plaintiff cannot hear even with the cochlear implant. For example, Plaintiff cannot hear water running, many low-pitched noises, and a knock at a door. Plaintiff can also barely hear the smoke alarm in her house. (Plaintiff decl. ¶7.)

---

[2] Relevant excerpts of the Plaintiff's deposition are attached to the Motion as Exhibit A.
[3] Relevant excerpts of the deposition of April Lockhart are attached to the Motion as Exhibit B.
[4] The declaration of Keosha Jordan is attached to the Motion as Exhibit C.

Despite being deaf and having a severe speech impairment, Defendant hired Plaintiff on August 30, 2008, for a production associate position at its East 23rd Street restaurant in Chattanooga, Tennessee ("Restaurant"). (Exhibit D, Bates No. D00001.) At the time of hiring, Defendant was fully aware that Plaintiff was deaf. (Defendant's Responses to Plaintiff's Requests for Admission No. 1[5]; Hildebrandt depo. p. 41.[6]) In fact, it was common knowledge at the Restaurant that Plaintiff was deaf. (Daniels depo. p. 39.)[7] In order to communicate with Plaintiff, employees at the restaurant had to speak to her face-to-face so Plaintiff could read their lips. (Daniels depo. p. 27, 36, 40.) Employees also used Plaintiff's cousin, Terrance Crowder, as a "mouthpiece" for Plaintiff. (Daniels depo. p. 39-40.)

Plaintiff worked five days during the month of September 2008. (Exhibit H, Redacted Bates Nos. D00326, D00334, D00345.) Plaintiff last worked for Defendant on September 20, 2008. (Defendant's Response to Requests for Admission No. 5.) Plaintiff was not scheduled for work after September 20, 2008. (Defendant's Response to Requests for Admission No. 11.) During this time, Plaintiff received adequate training so that she was equipped to perform all the functions of her job. (Daniels depo. p. 28.)

Plaintiff could and did perform all the essential functions of her job at Defendant. Defendant's witnesses testified that a person who is deaf and mute, but can read, can perform all of the essential functions of a production associate job. (Hildebrandt depo. p. 39-40; Evans depo. p. 34-36;[8] Wright depo. p. 28-29;[9] Thomas depo. p. 19.[10]) Defendant admitted that Plaintiff was qualified to perform the essential functions of the job of Production/Service

---

[5] Defendant's Responses to Plaintiff's Requests for Admission are attached to the Motion as Exhibit E.
[6] Relevant excerpts of the deposition of Michael Hildebrandt are attached to the Motion as Exhibit F.
[7] Relevant excerpts of the deposition of Rochelle Daniels are attached to the Motion as Exhibit G.
[8] Relevant excerpts of the deposition of David Evans are attached to the Motion as Exhibit I.
[9] Relevant excerpts of the deposition of Ray Wright are attached to the Motion as Exhibit J.
[10] Relevant excerpts of the deposition of Dave Thomas are attached to the Motion as Exhibit K.

Associate. (Defendant's Response to Request for Admission No. 10.) Plaintiff was considered a good worker. (Daniels depo. p. 28.) In fact, Ray Wright, who was the Director of Area Operations, even stated in an email to Michael Hildebrandt, who was the Director of Human Resources, that Defendant "would welcome [Plaintiff] back if she has an interest in returning." (12/4/08 email from Ray Wright to Michael Hildebrandt.[11])

### III. LEGAL ARGUMENT

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). The ADA defines "disability" as follows: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. §12102(2). A "physical impairment" is defined as

> [a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. §1630.2(h)(1). Regulations issued by the EEOC to provide interpretive guidance for terms found in the ADA define "major life activities" to include "hearing" and "speaking". 29 C.F.R. §1630.2(i).

In this case, Plaintiff's disabilities are her deafness and severe speech impairment. These physical impairments affect Plaintiff's hearing and speech organs. The major life activities that are affected by Plaintiff's disability are her ability to hear and speak. Even with a cochlear

---
[11] Copy of email (Bates No. D00538) attached to the Motion as Exhibit L.

implant, Plaintiff's disability substantially limits her ability to hear and speak. While Plaintiff's hearing has improved some with the implant, Plaintiff still cannot hear enough to understand speech, and she still has severe hearing loss. For example, even with the cochlear implant, Plaintiff can hear sounds but cannot distinguish speech. In order for Plaintiff to understand a person who is talking, she must face the person who is talking in order to read his or her lips. Even with the cochlear implant, Plaintiff cannot understand sound transmitted through electronic devices such as a radio. She cannot watch television without closed captioning. Even with the cochlear implant, Plaintiff still cannot hear some sounds such as water running, many low-pitched noises, and a knock at the door. She can barely hear the smoke alarm in her house. Courts have routinely found that people who are deaf fit within the definition of "disability" in the ADA. *See, e.g., Abernathy v. Valley Med. Ctr.*, 2006 WL 1515600 at *3 (W.D. Wash. May 25, 2006) (plaintiff is disabled under the ADA since he is deaf and uses sign language as his primary method of communication); *Connors v. West Orange Healthcare Dist.*, 2005 WL 1944593 at *1 (M.D. Fla. Aug. 15, 2005) (plaintiffs are disabled under the ADA because they are profoundly deaf and communicate in sign language); *Rennie v. United Parcel Service*, 139 F.Supp.2d 159, 166 (D. Mass. 2001) (deaf person is disabled under the ADA); *Hanson v. Sangamon County Sheriff Dept*, 991 F.Supp. 1059, 1063 (C.D. Ill. 1998) (deaf person is clearly disabled under the ADA).

It should also be noted that Plaintiff's hearing and speech impairments are permanent in nature. Plaintiff has been deaf from birth. Her speech impairment has existed since early childhood. Even with the cochlear implant, Plaintiff still has severe hearing loss. Based on the foregoing facts, it is undisputed that Plaintiff has a "disability" under the ADA.

To be a "qualified individual with a disability" under the ADA, a plaintiff must show that, despite a disability, he or she can perform the essential functions of the employment position. This requirement is easily met since Defendant has conceded this fact.

> 10. Despite her hearing impairment, Plaintiff was qualified to perform the essential functions of the job of Production/Service Associate with Defendant.
>
> **ANSWER: Admitted.**

(Defendant's Responses to Plaintiff's Requests for Admission, No. 10.)

Not only was Plaintiff qualified to perform the essential functions of her job, she actually performed her job satisfactorily for five days in September of 2008. Rochelle Daniels even described her as a good worker. In a December 2008 email, Ray Wright stated that Defendant "would welcome [Plaintiff] back if she has an interest in returning." If she was not a good worker or qualified to perform all of the essential functions of the job, Defendant certainly would not welcome Plaintiff's return to work.[12] Based on the foregoing, it is undisputed that Plaintiff was a "qualified individual with a disability" under the ADA.

## IV. CONCLUSION

Wherefore, based on the foregoing, Plaintiff submits that, as a matter of law, there being no issues of disputed material fact, the Court should find that Plaintiff is "a qualified individual with a disability" as that term is defined under both the ADA and TDA.

---

[12] Ray Wright's email is merely intended to show that Plaintiff was fully qualified to perform her job. Plaintiff contends that it does not accurately reflect the "intent" of the decisionmakers. To the contrary, much evidence shows that the decision to remove Plaintiff from the work schedule was influenced by anti-disability bias. However, such evidence is not appropriate for purposes of Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

BURNETTE, DOBSON & PINCHAK

By:   s/ Doug S. Hamill
      Doug S. Hamill, BPR No. 22825
      Attorney for Plaintiff
      713 Cherry Street
      Chattanooga, Tennessee 37402
      Phone: (423) 266-2121
      Fax: (423) 266-3324

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of July, 2010, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By:   s/ Doug S. Hamill