UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KEOSHA JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:09-CV-142 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| THE KRYSTAL COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Before the Court is Plaintiff Keosha Jordan's ("Plaintiff") motion for a new trial (Court File No. 114). Defendant Krystal Company ("Defendant") filed a response in opposition (Court File No. 118). For the reasons stated below, the Court will **DENY** Plaintiff's motion for a new trial (Court File No. 114).

I. BACKGROUND

Plaintiff brought this action against Defendant alleging unlawful discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* and the Tennessee Disabilities Act ("TDA"), Tenn. Code Ann. § 8-50-103. According to Plaintiff, Defendant discriminated against her on the basis of her disability when Defendant eliminated her work hours. Defendant denies discriminating against Plaintiff on the basis of her disability. Defendant contends it reduced Plaintiff's work hours because of a store-wide reduction in labor hours. The case proceeded to trial and the jury returned a verdict in favor of Defendant.

Plaintiff was born deaf. While she received cochlear implants at some point, she still cannot hear enough to understand speech, and she suffers from severe hearing loss. She cannot audibly

speak in the English language, and she communicates primarily by sign language. Plaintiff can, however, read lips. In order to do so, Plaintiff must face the person who is speaking to her.

According to testimony at trial, General Manager Aisha Marbury ("Marbury") hired Plaintiff in August 2008 for a position as a production associate at Defendant's East 23rd Street restaurant in Chattanooga, Tennessee. At the time Plaintiff was hired, Marbury was aware she is deaf. In order to communicate with Plaintiff, employees either spoke to her face-to-face so Plaintiff could read their lips, or Plaintiff's cousin, Terrance Crowder, acted as a "mouthpiece" for her.

Marbury testified that on Plaintiff's first day of work, Marbury left Krystal's temporarily to begin worker's compensation medical leave (Court File No. 95, Tr. at 101). However, Marbury prepared the weekly work schedule two weeks in advance, and she scheduled Plaintiff to work on Saturday and Sunday from 2:00 p.m. until 10:00 p.m. (*id.* at 101-102).

During Marbury's medical leave, the restaurant was managed by David Evans ("Evans"), as Associate General Manager. Under his management, Plaintiff only worked a few days during the month of September 2008. On her last day, September 20, 2008, Plaintiff was sent home by Evans after only working for approximately thirty minutes, and she was never placed on the schedule to work at Krystal's again.

When Marbury returned, she asked Evans why Plaintiff was no longer on the schedule. According to Marbury's testimony, Evans replied, "Did you know [Plaintiff] was deaf?" (Court File No. 95, Tr. at 108). Marbury later attended a meeting with upper-management in which the attendees discussed Plaintiff's situation (*id.* at 111). During the meeting Ray Wright ("Wright"), the Director of Area Operations, asked Marbury about her knowledge of Plaintiff's situation and whether Marbury attempted to contact Plaintiff to place her back on the schedule. Wright also called

2

Mike Hildebrandt ("Hildebrandt"), Human Resources Director. Hildebrandt informed Wright that Plaintiff had filed a lawsuit (*id.*). As a result, Wright reportedly told Marbury not to repeat "anything that was going on" (*id.* at 112); rather, he instructed Marbury that if anyone asked, she was to say that it was the restaurant's position that Plaintiff was removed from the schedule because Defendant had to cut hours (*id.* at 111-112).

David Thomas, former District Supervisor for the Chattanooga market, testified he conducted an investigation of the situation at the direction of the human resources department (*id.* at 152-54). When Thomas asked Evans why he took Plaintiff off of the schedule, Evans told Thomas it was because Plaintiff is deaf (*id.* at 155). As a result, Thomas reported this information to Wright who instructed Thomas to get a written statement from Evans. Evans, however, provided an inconsistent statement (*id.* at 157). In contrast, Thomas was not asked to provide a written statement of his investigation.

Rochelle Daniels ("Daniels"), the Breakfast Supervisor, also substantiated Plaintiff's claim that Evans removed her from the schedule solely because of Plaintiff's disability. Daniels testified Plaintiff was the only employee completely removed from the schedule at the time Plaintiff was removed (*id.* at 197). Although Daniels previously helped with setting the schedule, Evans took over scheduling duties exclusively as interim manager (*id.* at 193). Daniels further alleged Evans made negative comments regarding Plaintiff's disability.

Finally, Defendant's relatives, including her cousin Terrance Crowder ("Crowder"), also a former employee of Defendant, her step-father, and her mother all testified regarding their beliefs as to why Plaintiff was removed from Defendant's work-schedule.

In contrast, Defendant called witnesses to establish their contention that Plaintiff was removed from the schedule for non-discriminatory reasons – specifically, because the store needed

to reduce its hours. Evans testified that when he took over the restaurant upon Marbury's leave of absence, he was required to verify the store's inventory (Court File No. 121, Tr. at 461-62). In addition, he was "charged with the responsibility of balancing the schedule" (*id.* at 462). According to him, he was instructed to "cut crew hours, production and service . . . based on business need" (*id.* at 468). Evans, however, did not choose the people to be cut from the schedule. That job was handled by Daniels, who testified on behalf of Plaintiff (*id.*).

Evans also denied ever making comments regarding Plaintiff's disability (*id.*). In fact, he testified that he did not even know who Plaintiff was until he was informed she had filed a complaint on the basis of discrimination (*id.* at 471).

Hildebrandt, former director of human resources, testified regarding his role in the investigation that arose as a result of Plaintiff's allegations that her hours were reduced because of her disability. He stated "throughout the course of the investigation[,] [he] was able to conclude that there were other employees whose hours were reduced as well" (*id.* at 597). He also believed Daniels had called Plaintiff to offer her additional hours, as Plaintiff had been informed that she would be placed on the schedule as "call-in only" (*id.* at 597-98).

Similarly, Wright stated he did not find any evidence of discrimination throughout the course of his investigation. If fact, it was Wright's contention that if "Evans had said in [his] presence that someone was deaf and was unworthy of working for [Defendant,] [he] would have immediately terminated [Evans]" (Court File No. 96, Tr. at 322). Rather, Wright also stated Plaintiff had been taken off the schedule in an effort to reduce hours.

## II. STANDARD OF REVIEW

Under Rule 59, this Court may grant a new trial only "when a jury has reached a 'seriously

4

erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)). However, this Court "[is] not free to reweigh the evidence or set aside the jury verdict merely because the jury could have drawn different inferences or conclusions." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (referencing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

## III. DISCUSSION

Plaintiff offers a number of reasons which she asserts, taken together or independently, require a new trial be granted in this matter (Court File No. 115 at 11).

### A. Rebuttal Testimony of Barbara Jarvis

First, Plaintiff asserts this Court allowed improper rebuttal testimony from Krystal auditor, Barbara Jarvis. Indeed, during a break of the proceedings, Defendant disclosed for the first time three rebuttal witnesses it intended to call to testify. Plaintiff, however, argued such witnesses were not rebuttal witnesses

In regards to Jarvis, Defendant reported to the Court that her testimony would rebut witness Marbury's testimony that she was unfairly terminated. As the Court previously noted, Jarvis' testimony did not directly relate to either of the parties (Court File No. 111, Tr. at 27:18-21). Rather, Jarvis' testimony "went to the credibility . . . of one of [Plaintiff's] witnesses" (Court File No. 118 at 12).

Even if this Court committed error by allowing Jarvis to testify, a jury's verdict should only be overturned based on "evidentiary errors . . . if they were not harmless." *Mike's Train House, Inc.*,

5

472 F.3d at 409. "The harmless-error standard provides that if 'one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id.* at 409-10 (quoting *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002)).

Here, the basis of Jarvis's testimony was her belief that Marbury had been stealing from Defendant. Given the limited nature of the testimony, the Court does not have any doubts that Jarvis' testimony did not sway the jury's verdict. Because the Court agrees with Defendant that "allowing [] Jarvis to testify was not error, and it certainly was no prejudicial error" (Court File No. 118 at 14), the Court will deny Plaintiff's motion for a new trial on this ground.

**B.     Month-Long Recess**

Plaintiff also urges this Court to grant a new trial in light of the "near month-long break" (Court File No. 115 at 15). Indeed, Plaintiff finished its case-in-chief on October 13, 2010, and the trial did not resume until November 8, 2010.[1] The Court acknowledges that, in some instances, "delays and interruptions can rise to the level of reversible prejudice." *Nat'l Bancard Corp. (NaBanco) v. VISA U.S.A., Inc.*, 779 F.2d 592, 605 (11th Cir. 1986).

However, the most important fact here is that there is no evidence Plaintiff's counsel "offer[ed] any objection when consulted about the time off" during the final pretrial conference when the matter of a recess was first discussed or during trial. *See Acevedo-Feliciano v. Ruiz-Hernandez*, 447 F.3d 115, 120 (1st Cir. 2006). In addition, this case did not involve particularly complex facts which involved "systematic and cohesive evidentiary support." *Cf. Young v. Simon,*

---

[1]However, the Court notes there is a strong argument that Defendant could have been more prejudiced by the delay than Plaintiff. On the second day of trial, Defendant offered to start putting on its case before Plaintiff finished her case because Plaintiff's interpreter was not available. Therefore, there was an interruption in Defendant's proof more so than in Plaintiff's.

6

*Inc. v. Merritt Sav. & Loan, Inc.*, 672 F.2d 401, 402 (4th Cir. 1982). Accordingly, because the parties had an opportunity to participate in discussions regarding the dates for trial, and because the Court finds a lack of prejudice, the Court will deny Plaintiff's motion for a new trial on this ground.

### C.     Defense Counsel's Closing Arguments

Plaintiff argues she is also entitled to a new trial on the grounds "[Defendant's] attorney made a number of inappropriate and unfounded arguments [during Defendant's closing argument] that constituted misconduct . . ., [and] the verdict was unfairly influenced . . ., especially given the delay between the presentation of Plaintiff's evidence and the Defendant's evidence" (Court File No. 115 at 17).

In order to receive a new trial on the grounds Defendant's counsel made improper statements during his closing arguments, Plaintiff must "show both that the closing argument was improper and that [Plaintiff was] prejudiced by the impropriety, that is, that there is a reasonable probability that the jury's verdict was influenced by the improper argument." *Magical Farms, Inc. v. Land O'Lakes, Inc.*, 356 F. App'x 795, 805 (6th Cir. 2009) (citing *Fuhr v. School Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004)). Nonetheless, this Court has "broad discretion in deciding whether to grant a motion for a new trial" on the ground Defendant's comments improperly prejudiced the jury. *See Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 819 (6th Cir. 2007); *Fuhr*, 364 F.2d at 759.

To make its determination, the Court "must examine . . . the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980); *see also Maday*, 480 F.3d at 819.

7

Here, any improper comments made by defense counsel seem to have been limited to the closing argument. Importantly, the type of statements made during the closing argument "[did not] permeate[] the entire trial . . . in a continuing pattern of misconduct." *City of Cleveland*, 624 F.2d at 758 (internal citations and quotations omitted). In addition, Plaintiff's counsel failed to object to the closing argument prior to the jury reaching its verdict. *See Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 478 (6th Cir. 2007). While defense counsel's comments may have "flirted with impropriety," it is just as likely that "[his] demeanor and tactics negatively influenced [his] own client's case." *Maday*, 480 F.3d at 818. Finally, "any prejudice resulting from these remarks was cured by [the Court's] clear instructions to the jurors that they were to decide the case based on the testimony and evidence presented in court, and that the arguments and statements of counsel were not evidence they could consider." *Farley v. Country Coach Inc.*, No. 08-1591, 2010 WL 5128717, at *8 (6th Cir. Dec. 15, 2010) (internal citations omitted). Accordingly, the Court finds defense counsel's comments were not sufficiently prejudicial to warrant a new trial.

### D. Jury Determination

Finally, Plaintiff contends given the evidence presented at trial no reasonable jury could have found in favor of Defendant. However, the Court finds given the conflicting testimony presented by Plaintiff and Defendant, the jury could have reasonably concluded Plaintiff's hours were reduced for non-discriminatory reasons. Defendant offered proof that hours were cut for legitimate business reasons.

## VIII. Conclusion

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for a new trial (Court File No. 114). The Court does not find that all of these factors, taken together, warrant a new trial.

8

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**